327 S.E.2d 671

**COMMITTEE on LEGAL ETHICS OF
the WEST VIRGINIA STATE BAR**

v.

**Walter Lloyd BLAIR.**

**No. 16368.**

Supreme Court of Appeals of
West Virginia.

Oct. 17, 1984.

Rehearing Denied Nov. 13, 1984.

Robert H. Davis, Jr., and John A. Rogers, West Virginia State Bar, Charleston, for complainant.

Steven M. Askin, Askin, Pill, Scales & Burke, Martinsburg, for respondent.

NEELY, Justice:

The Committee on Legal Ethics of the West Virginia State Bar has petitioned this Court to suspend Walter Lloyd Blair from the practice of law for one year. Disciplinary action is sought on two counts. First, the Committee found that Mr. Blair attempted to obstruct justice by suggesting to a witness that she not appear at trial. Second, the Committee found that Mr. Blair failed to assist counsel who replaced Mr. Blair after Mr. Blair withdrew from a case.

This Court, upon review of the record, finds Mr. Blair guilty of obstructing justice in violation of DR 1–102(A)(3)–(6) and DR 7–109(A) and (B) of the *Code of Professional Responsibility of the West Virginia State Bar.* However, we find that the Committee has not met the burden of proof concerning the charge of failure to assist successor counsel. For reasons that we will set forth below, we have decided to reduce the time of Mr. Blair's suspension from the recommended year to a period of six months, but in addition to that suspension, we order that Mr. Blair be confined to the practice of law in the State of West Virginia under the supervision of a lawyer acceptable to the West Virginia State Bar for a period of three years after his reinstatement.

I

Walter Lloyd Blair is a West Virginia lawyer whose office is in Charles Town, West Virginia, but who lives in Montgomery County, Maryland. Although Mr. Blair is not a member of the Maryland Bar, on numerous occasions he has appeared in Maryland courts *pro hac vice.* Indeed the difficulties into which Mr. Blair has so tragically cast himself derive from his representations to his Maryland neighbors that he is "their neighborhood attorney" or, on at least one occasion, a partner in a Baltimore law firm!

One of Mr. Blair's Montgomery County neighbors, Mrs. Mary Chambers, the complainant, retained Mr. Blair in July of 1980 to represent her daughter, Kimberly, in a juvenile matter. Cumulatively, Mrs. Chambers paid Mr. Blair $800 in connection with the representation of her daughter. Mr. Blair withdrew as Kimberly's counsel eight months later, a few days before Kimberly's trial.

In December 1980, Mrs. Chambers was subpoenaed to testify about a child abuse incident involving a family named Chung who lived opposite her. The hearing was scheduled for 9 February 1981 and Mrs. Chambers was a witness for the prosecution. As it turned out, Mr. Blair was counsel for Mr. Chung, the defendant.

On 6 February 1981, the weekend before the child abuse hearing, Mrs. Chambers called Mr. Blair from her Washington, D.C. office. Mrs. Chambers did not telephone Mr. Blair for any reason connected with the Chung prosecution, but rather because she had been informed that Mr. Blair had made indiscreet inquiries of their mutual neighbors concerning her daughter, Kimberly's, chastity. In the course of this conversation, made in the presence of two of her fellow employees, Mrs. Chambers learned that Mr. Blair was representing Mr. Chung. She was then advised by Mr. Blair to feign illness and absent herself from court on the day of the abuse hearing. This, Mr. Blair assured her, would assuage her conscience because otherwise she would blame herself later if neighbor Chung were imprisoned, leaving his family fatherless. Mr. Blair stated, however, that he couldn't tell her what to do since as a lawyer it was incumbent on him to be "cautious." Two witnesses testified to this conversation, and one of them corroborated Mrs. Chambers' final response: "Blair, I'll be there, I won't be sick on Monday."

Infuriated and somewhat shaken by her attorney's suggestions, Mrs. Chambers telephoned the victim witness coordinator for the state's attorney in Montgomery County, Maryland, who relayed the tone and substance of her call to the assistant state's attorney for Montgomery County, Ms. Janet Webb. Ms. Webb contacted Mrs. Chambers and convinced her to testify against Mr. Chung. Mrs. Chambers was the State's only witness.

On 17 February 1980, respondent Blair petitioned to withdraw as counsel for Kimberly Chambers, stating that Mrs. Chambers had wrongfully accused him of attempting to obstruct justice. The motion was granted and Mrs. Chambers obtained the services of Mr. Vincent Butler to represent her daughter in the pending juvenile case—now only eight days from trial. Mrs. Chambers contacted Mr. Blair, at Mr. Butler's request, to obtain her daughter's file. Although Mr. Blair agreed to relinquish Kimberly's file, no material was ever received by Mr. Butler. The juvenile court found Kimberly guilty of the charges and put her on probation in her mother's custody.

In March 1981, Mrs. Chambers lodged her complaints (obstruction of justice and failure to assist successor counsel) against Mr. Blair with both the Maryland and West Virginia State Bars. Mr. Blair argues at great length in his brief that Mrs. Chambers' allegations are entirely untrue and he insists that the only basis for these complaints is that Mrs. Chambers was displeased with him. Mr. Blair defends affirmatively by denying that the West Virginia State Bar has jurisdiction over this case. In addition, he insists that the lengthy disposition of these complaints has prejudiced his defense of the charges.

The Maryland Attorney Grievance Commission did not act on Mrs. Chambers' complaint. However, contrary to Mr. Blair's assertion, the Grievance Commission's failure to act was not a rejection of the complaint on its merits. In answer to Mr.

Blair's query about his case, the Assistant Bar Counsel of the Maryland Commission stated:

No complaint file was opened in this office, nor will one be open since you have advised me that you are a member of the West Virginia Bar and not a member of the Maryland Bar. This office only has jurisdiction over complaints involving Maryland attorneys. Therefore, we will take no further action in this matter. *Respondent's Exhibit No. 3.*

We assume that the Attorney Grievance Commission in Maryland expected, as it had every right to expect, that the West Virginia State Bar would investigate and dispose of this case.[1]

II

■ Maryland's summary rejection of the complaint does not constitute, as Mr. Blair argues, an adjudication of the matter that would, in any way, deprive the West Virginia State Bar of its jurisdiction over him. All lawyers who practice under a West Virginia license are subject to the jurisdiction of the West Virginia State Bar—whether they practice within or without our State.

Although the complaints against the respondent were filed in March 1981, no hearing was held until February 1984. Mr. Blair maintains that he has suffered serious harm by the delay in disposing of this case. He says he "could not even remember crucial activities to defend his case" and that he was unable to locate witnesses who could offer evidence on his behalf. This Court has no comment on Mr. Blair's loss of memory, but notes the dearth of any evidence indicating Mr. Blair's case would be improved by the testimony of any absent witnesses.

■ Notwithstanding the State Bar's apparent delay in dealing with this complaint, the Court does not find "that the delay resulted in prejudice or disadvantage to the respondent—attorney." Syl.Pt. 1 of *Legal Ethics Committee v. Pence,* 161 W.Va.

---

1. Mr. Blair stands accused of endeavoring "to obstruct or impede the due administration of justice." *Md.Code* Art. 27, § 27 [1981], which we hardly need point out is a crime in West Virginia as well. *See, W.Va.Code* 61–5–27 [1923].

240, 240 S.E.2d 668, 93 A.L.R.3d 1046 (1977). Other than the irritation caused by the delay, Mr. Blair does not provide any evidence of harm to his ability to defend. Indeed, much time was lost through myriad complaints, notices, petitions, etc., by which Mr. Blair attempted to prolong this matter. The evidence against him remains unrebutted, undenied and unchanged despite the passage of time.

This Court, however, must register its discomfort with the extraordinarily long time the State Bar took to complete its action on this complaint. In this regard we would note that public confidence in the West Virginia Bar can hardly be nourished if it habitually takes three years for an ethics violation to be reported, investigated and adjudicated. Such delay may not only be prejudicial to the lawyer who is charged, but also, and more importantly, delay is always prejudicial to the public whom we are here to protect.

### III

■ "In an attorney disciplinary proceeding based on a complaint charging professional misconduct and prosecuted by the Committee on Legal Ethics of the West Virginia State Bar for publicly reprimanding the attorney and for suspending the license of the attorney to practice law, the burden is on the committee to prove the charges contained in the complaint by full, clear and preponderating evidence." Syl.Pt. 2, *Committee on Legal Ethics v. Daniel*, 160 W.Va. 388, 235 S.E.2d 369 (1977). This Court finds that the Committee has met the burden with regard to the charge of obstructing justice.

Four witnesses testified under oath about the telephone conversation of 6 February 1981 between Mrs. Chambers and Mr. Blair. The respondent did not even deny the charges under oath, but, chose, instead to impugn Mrs. Chambers' character and to defend on a variety of collateral, and entirely inconsequential, matters.

Mr. Blair never took the witness stand in his own defense and did not assert his Fifth Amendment privilege not to incriminate himself. This situation, thus, is not analogous to *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) where the Supreme Court stated that the dishonor of disbarment could not be imposed on an attorney as his price for asserting the Fifth Amendment. Indeed, throughout the hearing Mr. Blair stated he might testify should he deem it to be necessary; he did not. Therefore, we have a situation in which the uncontroverted depositions or live testimony of four witnesses, under oath, show an attempt by Mr. Blair to prevent Mrs. Chambers from testifying. Mr. Blair counters this evidence simply by dismissing the incident in his brief as never having occurred. His statements in his brief to this Court, however, do not rise to the level of sworn rebuttal testimony. Consequently, this Court has before it a clear and convincing *prima facie* case of witness tampering that is entirely unrebutted.

■ The Committee on Legal Ethics has not, however, satisfactorily demonstrated Mr. Blair's refusal to assist Kimberly's lawyer after Mr. Blair withdrew from her case. Mr. Blair argues that he was unable to enter the juvenile court records to obtain evidence of his work product. Certainly Mr. Blair should have turned over whatever relevant material he possessed to Mr. Butler. However, we note that Mr. Butler never asked Mr. Blair for the file nor is there any allegation that Kimberly's defense was impaired by its absence. Accordingly, the evidence is insufficient to take disciplinary action against Mr. Blair for neglecting the interests of a client and for failure to represent a client zealously.

### IV

■ This Court is the final arbiter of legal ethics problems and "must make the ultimate decision about public reprimands, suspensions or annulments of attorneys' licenses to practice law." *In re L.E.C.*, 171 W.Va. 670, 301 S.E.2d 627, 629 (1983); *State ex rel. Sowa v. Sommerville*, 167 W.Va. 353, 280 S.E.2d 85 (1981); *W.Va. Code* 51–1–4a(c) [1945]. Thus, while according respect to the recommendations of the Committee on Legal Ethics, we remain free to mould the sanction. We have stated that:

**498**

' In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances in each case, including mitigating facts and circumstances, in determining what disciplinary action, if any is appropriate ... Syl.Pt. 2, *Committee on Legal Ethics, etc. v. Mullins,* 159 W.Va. 647, 226 S.E.2d 427 (1976)

We infer from the totality of the evidence before us in this case that Mr. Blair is using his West Virginia license to practice in Maryland through all-too-frequent *pro hac vice* requests to the Maryland courts. By so doing Mr. Blair has not had the benefit of the stimulation and education that he otherwise would have had from his peers at the West Virginia Bar. At the same time his lack of membership in the Maryland Bar has made it impossible for him to share in the collegiality of lawyers there. Despite promises to do so, Mr. Blair has not sought admission to the Maryland Bar, yet implies to potential clients that he is indeed a Maryland lawyer.

Mr. Blair's conduct in obstructing justice displays either a cavalier disregard for, or an alarming ignorance of, the Code of Professional Responsibility that the members of the West Virginia State Bar are expected to follow. We find that the one year suspension of Mr. Blair's license to practice law, as recommended by the Committee on Legal Ethics, is justified, but we prefer instead to use this opportunity to help Mr. Blair expand his own knowledge about lawyering in general and the ethics governing law practice in particular rather than simply sanctioning him.

Accordingly, this Court declines to adopt the Bar's recommended one year suspension and, in its stead, imposes only a six-month suspension as part of the penalty. We add, however, that after his suspension, Mr. Blair be confined to practicing law in West Virginia for a period of three years. During these three years he shall remain under the supervision of a West Virginia lawyer willing to assume total responsibility for his conduct. This lawyer must be acceptable to the West Virginia State Bar. Mr. Blair may nominate this lawyer to the West Virginia State Bar at any time while his license is suspended so that he may resume practice immediately upon his reinstatement. The State Bar will have thirty days to notify Mr. Blair whether it rejects his supervising lawyer.

During this three year period of supervision, Mr. Blair may not enter any foreign court *pro hac vice* or accept any fee from an out-of-state client for any legal advice or representation concerning a matter beyond our borders. His clients, may, however, be West Virginia residents soliciting advice on matters that arise outside of West Virginia or nonresidents with legal problems in West Virginia. In light, however, of Mr. Blair's current circumstances we decline to award costs to the State Bar.

For the above reasons, the license to practice law of Walter Lloyd Blair is suspended.

License Suspended.