400 S.E.2d 276

**The COMMITTEE ON LEGAL ETHICS OF the WEST VIRGINIA STATE BAR**

v.

**David CHARONIS, a Member of the West Virginia State Bar.**

No. 19682.

Supreme Court of Appeals of West Virginia.

Dec. 6, 1990.

Rehearing Denied Jan. 17, 1991.

Cynthia Santoro Gustke, Sherri D. Goodman, Charleston, for The Committee on Legal Ethics of the WV State Bar.

David Charonis, Parkersburg, for David Charonis.

**PER CURIAM:**

This is a disciplinary case initiated by the Committee on Legal Ethics (Committee) of the West Virginia State Bar against David M. Charonis, a member of the bar practicing in Wood County. The Committee seeks to suspend Mr. Charonis's license to practice law for a period of six months based upon his handling of legal matters entrusted to him by two clients, Lawrence Guthrie and James Reed. We agree with the Committee's conclusion that Mr. Charonis is guilty of certain ethical violations;

we also believe, however, that some of the charges are unsupported and that the recommended sanction is excessive.

## I.

### The Guthrie Matter

Lawrence Guthrie hired Mr. Charonis to help him obtain custody of his sixteen-year-old daughter and child support from his former wife who was living in Virginia. Mr. Charonis filed a petition for modification in the Circuit Court of Wood County. The matter never came on for hearing, however, because Mr. Guthrie and his former wife agreed to the change in custody of their daughter in an order entered on February 3, 1988. The agreed order did not include provisions for payment of child support to Mr. Guthrie, which he claimed was important to him.

Mr. Guthrie testified that at the time he signed the agreed order, he was relying on Mr. Charonis's representations that the Child Advocate Office would assist him in obtaining support from his former wife. When he contacted the Child Advocate Office, however, he was told that they were unable to assist him in any way because he did not have a child support order.

The Committee contends that Mr. Charonis's advice to Mr. Guthrie regarding the Child Advocate Office constitutes misrepresentation, in violation of DR 1–102(A)(4).[1] We disagree. Mr. Charonis's indication that the Child Advocate Office would be a source of help to Mr. Guthrie in obtaining child support was simply an accurate statement of its function. The legislature has mandated that the Child Advocate Office work to obtain court orders for child support.[2] A worker from the Child Advocate Office testified that although they told Mr.

Guthrie they could not help him, they could have filed a reciprocal support action to compel payment of child support by his former wife. It appears that it was the Child Advocate Office, not Mr. Charonis, that was remiss in its duties. We, therefore, decline to discipline Mr. Charonis on this basis.

The Committee also asserts that Mr. Charonis abandoned Mr. Guthrie's case in violation of DR 6–101(A)(3)[3] and DR 7–101(A)(1).[4] We cannot completely agree. Although it is apparent that Mr. Charonis did little or nothing to forward Mr. Guthrie's cause after the agreed order was signed, there is some question as to whether an attorney-client relationship continued to exist. Mr. Charonis has indicated that he believed the relationship had ended with the signing of the agreed order. This problem is complicated by the absence of a written contract specifying the legal work Mr. Charonis was to perform for Mr. Guthrie. Although we do not condone employment agreements which result in this type of ambiguity, we are, nevertheless, reluctant to condemn Mr. Charonis for his failure to perform legal work which he may have believed to be beyond the scope of his employment.

## II.

### The Reed Matter

James Reed hired Mr. Charonis to represent him in two proceedings arising out of the termination of Mr. Reed's employment at Sears Roebuck & Company (Sears) on August 17, 1987. Mr. Reed and Mr. Charonis did not sign a contract, but had an oral agreement that Mr. Charonis would receive a contingent fee of 25 percent for each case. The first undertaking was to obtain

---

1. DR 1–102(A)(4) of the Code of Professional Responsibility (1978) reads: "(A) A lawyer shall not: ... (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

2. W.Va.Code, 48A–2–2(b)(6) (1986), reads: "(b) In order to carry out the purposes and intent of the legislature, the child advocate office shall have, as its primary responsibilities, the following: ... (6) Obtaining court orders for child and spousal support[.]"

3. DR 6–101(A)(3) of the Code of Professional Responsibility (1978) reads: "(A) A lawyer shall not: ... (3) Neglect a legal matter entrusted to him."

4. DR 7–101(A)(1) of the Code of Professional Responsibility (1978) reads, in pertinent part: "(A) A lawyer shall not intentionally: (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules[.]"

unemployment compensation benefits for Mr. Reed following his discharge. In addition, Mr. Reed wanted Mr. Charonis to file a wrongful discharge suit against Sears. Mr. Charonis never filed the wrongful discharge suit.

Mr. Charonis represented Mr. Reed at a hearing before the administrative law judge for the Department of Employment Security, where he prevailed. Sears appealed to the Board of Review. The Board of Review essentially acts as an administrative review panel. It does not take new evidence unless it finds such is required, but hears the appeal on the existing record. 7 W.Va.C.S.R. § 84-1-3.3.[5] Neither Mr. Charonis nor Mr. Reed attended the hearing before the Board of Review, which was held in Charleston. Mr. Charonis chose to submit the case on the record in order to prevent the entry of potentially damaging testimony by Mr. Reed. The Board of Review reversed the decision of the administrative law judge and held that Mr. Reed was not entitled to receive unemployment compensation benefits.

Mr. Reed desired an appeal from the decision of the Board of Review. Mr. Charonis assured Mr. Reed that he would file the appeal in the Circuit Court of Kanawha County. Mr. Charonis testified that he mailed the appeal, with the required fee, to the clerk of the circuit court well in advance of the deadline. After the appeal period had expired, however, Mr. Reed discovered that the appeal had never been filed in the circuit court.

Mr. Reed testified that Mr. Charonis assured him that he would refile the appeal, but he never did so. Mr. Reed ultimately dismissed Mr. Charonis as his counsel and requested the return of his file and fee. The file and fee were not returned until five months later, after Mr. Reed had employed another attorney.

Mr. Reed's subsequent counsel, in an attempt to revive Mr. Reed's right to appeal, deposed Mr. Charonis. Mr. Charonis testified that he believed that the attorney-client relationship had broken down when it was discovered that the appeal had not been filed and that he was unsure whether he was still retained by Mr. Reed as his counsel.

Mr. Charonis made no personal appearance during his disciplinary proceedings. His deposition was submitted, but it is incomplete on some of the aspects of his representation of Mr. Reed. We have no evidence as to whether he even advised Mr. Reed that he considered their relationship terminated. Failure to do so would result in neglect in violation of DR 6–101(A)(3).[6]

The Committee contends that Mr. Charonis's handling of Mr. Reed's legal matters resulted in violations of several disciplinary rules. They assert that Mr. Charonis continually misrepresented the status of his case to Mr. Reed, in violation of DR 1–102(A)(4).[7] We do not find any misrepresentation. Throughout the administrative proceeding, Mr. Charonis represented Mr. Reed and kept him informed of his strategy. Mr. Charonis mailed the appeal to the circuit court and informed Mr. Reed that he had done so. The appeal, unfortunately, was lost in the mail and was, therefore, never filed. Although Mr. Charonis was mistaken in his representation to Mr. Reed that it had been filed (and although he should have confirmed its receipt in the circuit court), we do not believe that Mr. Charonis misrepresented the status of the case insofar as he knew it.

The Committee also charges that Mr. Charonis failed to adequately communicate with Mr. Reed, thereby violating DR 6–101(A)(3) [8] and DR 7–101(A)(1).[9] Mr. Reed, his wife, and Mr. Charonis's secretary all testified that following the failed filing of the appeal, Mr. Charonis became noncommunicative to Mr. Reed, refusing to return

5. For an outline of the statutory procedure under the unemployment compensation law, see *Belt v. Rutledge*, 175 W.Va. 28, 330 S.E.2d 837 (1985).

6. *See* note 3, *supra*.

7. *See* note 1, *supra*.

8. *See* note 3, *supra*.

9. *See* note 4, *supra*.

his telephone calls and missing scheduled appointments. We believe that this behavior does constitute neglect and failure to zealously represent and that Mr. Charonis should be sanctioned for these violations of the disciplinary rules.

In addition, the Committee contends that Mr. Charonis's failure to return Mr. Reed's file after his discharge violates DR 2–110(A)(2).[10] We agree. Mr. Reed's discharge of Mr. Charonis constitutes a mandatory withdrawal under DR 2–110(B)(4).[11] Mr. Charonis was, therefore, obligated to return all papers to which Mr. Reed was entitled prior to withdrawing from the representation. We believe Mr. Charonis should be sanctioned for this violation as well.

■ Finally, the Committee charges that Mr. Charonis's collection of an unapproved fee for his representation of Mr. Reed through the administrative proceedings is a violation of DR 2–106(A),[12] which prohibits illegal fees. We disagree. The Board of Review has statutory authority to regulate fees charged by attorneys in unemployment compensation cases.[13] It is evident that Mr. Charonis's fee was not approved by the Board of Review. We decline to discipline Mr. Charonis for this omission, however, because both the statute and the regulations [14] fail to specify the means by which an attorney is to obtain approval for a fee in an administrative representation. Had Mr. Charonis inquired, he probably

would have been informed by the Department of Employment Security that he needed simply to submit a letter outlining the proposed fee for approval. In the absence of clear written guidelines, however, we can find no violation. *See Committee on Legal Ethics v. Coleman,* 180 W.Va. 493, 377 S.E.2d 485 (1988).

### III.

### *Disposition*

■ We have reviewed the recommendations and argument of the Committee. Mr. Charonis has also submitted a proposed disciplinary plan, which we have reviewed. Although we have considered these proposals, final disposition of this, as well as all other bar disciplinary cases, rests with this Court. As we said in Syllabus Point 3 of *Committee on Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984):

"This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."

■ The Committee recommends that we suspend Mr. Charonis's license for six months and reinstate it only under supervision. It is the responsibility of the Committee to prove that the sanctions are appropriate. As we stated in Syllabus Point

---

**10.** DR 2–110(A)(2) of the Code of Professional Responsibility (1978) reads:

"In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."

**11.** DR 2–110(B)(4) of the Code of Professional Responsibility (1978) reads, in pertinent part: "(B) ... [A] lawyer representing a client ... shall withdraw from employment, if: ... (4) He is discharged by his client."

**12.** DR 2–106(A) of the Code of Professional Responsibility (1978)[,] provides: "(A) A lawyer shall not enter into an agreement for charge, or collect an illegal or clearly excessive fee."

**13.** W.Va.Code, 21A–10–5, provides, in pertinent part: "An individual may be represented by counsel or authorized agent before the board of review, an appeal tribunal, or examiner, or a court; but the amount of the fee for such service shall be subject to the regulation of the board."

**14.** Section 4.03 of the Administrative Regulations of the Board of Review of the Department of Employment Security (1969), provides:

"Any party may appeal in person for himself, or may be represented by an attorney licensed to practice law in the courts of this State, in any proceeding before the Board of Review or appeal tribunal. The amount of the fee of such attorney shall be subject to the approval of the Board of Review."

1 of *Committee on Legal Ethics v. Lewis,* 156 W.Va. 809, 197 S.E.2d 312 (1973):

> "In a court proceeding prosecuted by the Committee on Legal Ethics of the West Virginia State Bar for the purpose of having suspended the license of an attorney to practice law for a designated period of time, the burden is on the Committee to prove by full, preponderating and clear evidence the charges contained in the complaint filed on behalf of the Committee."

As discussed above, the Committee has failed to prove all of the charges. Since not all of the alleged violations have been substantiated, we feel that the recommended sanctions must be reduced.

We decline to suspend Mr. Charonis's license for the six-month period, as recommended by the Committee, and instead suspend his license for a two-month period. In addition, Mr. Charonis is ordered to submit to the Committee a plan for a one-year supervised practice. Costs are also assessed against Mr. Charonis.

Two-month suspension with one-year supervised practice.