410 S.E.2d 418

The **COMMITTEE ON LEGAL ETHICS OF the WEST VIRGINIA STATE BAR**, Complainant,

v.

**David M. CHARONIS, a Member of the West Virginia State Bar**, Respondent.

No. 19682.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 1991.

Decided Oct. 22, 1991.

Maria Marino Potter, Bar Counsel, Charleston, for complainant.

David M. Charonis, pro se.

PER CURIAM:

In this attorney disciplinary proceeding, the Committee on Legal Ethics of the West Virginia State Bar ("the Committee") recommends that this Court suspend the license to practice law of the respondent, David M. Charonis, for his failure to comply with the supervised practice plan submitted to and approved by the chairman of the Committee in accordance with our decision in *Committee on Legal Ethics v. Charonis*, 184 W.Va. 268, 400 S.E.2d 276 (1990).[1] Upon consideration of this case,

1. In *Charonis,* as part of the disciplinary sanction imposed upon him, the respondent's law practice was to be monitored by a supervising

we agree with the Committee and order the suspension of the respondent's license to practice law.

In *Committee on Legal Ethics v. Charonis, supra,* the respondent's license to practice law was suspended by this Court for two months based upon the respondent's conduct in refusing to communicate with his client in an unemployment compensation case in violation of DR 6–101(A)(3) [2] and DR 7–101(A)(1) [3] of the Code of Professional Responsibility and in failing to return his client's file after he was discharged in violation of DR 2–110(A)(2) [4] of the Code of Professional Responsibility. We also ordered Mr. Charonis to submit to the Committee a proposed plan for a one-year supervised practice. *Id.* 184 W.Va. at 272, 400 S.E.2d at 280.

The Committee received a proposed plan for supervised practice on March 15, 1991. Arthur M. Recht, who was then serving as chairman of the Committee, reviewed the plan and requested certain modifications.

An amended supervised practice plan was subsequently submitted. Under the amended plan, the respondent was required to submit detailed weekly status reports regarding his cases and office procedures to his supervising attorney who was responsible for monitoring the respondent's practice. After reviewing the status reports, the supervising attorney was then required to forward them to the West Virginia State Bar. The amended supervised practice plan was approved by the current chairman of the Committee, Charles M. Love, III, by order dated May 6, 1991.

On July 10, 1991, the respondent's supervising attorney was contacted by the State Bar counsel concerning the respondent's failure to submit weekly status reports. The supervising attorney advised the State Bar counsel that he had received only one status report and that his attempts to prompt the respondent to comply with the plan were unsuccessful. The State Bar counsel then sent a letter to the respondent, by certified mail, advising him that compliance with the plan was expected on or before July 20, 1991. The respondent did not answer the State Bar counsel's letter.

The Committee filed a petition with this Court on July 22, 1991, requesting that the respondent's license to practice law be suspended for failing to comply with the supervised practice plan. In his answer to the petition, the respondent admitted that there had been a delay on his behalf in providing the reports to his supervising attorney and represented to the Court that those reports had been prepared and forwarded to the supervising attorney. The respondent requested that this Court not impose the suspension of his license and suggested that he follow the supervised practice plan for another period of one year.[5]

■ Although the recommendations made by the Committee are to be given substantial consideration, this Court makes the ultimate decisions regarding disciplinary sanctions as we recognized in syllabus point 3 of *Committee on Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671

---

attorney and the State Bar for a period of one year.

**2.** DR 6–101(A)(3) of the Code of Professional Responsibility (1985) reads: "(A) A lawyer shall not: ... (3) Neglect a legal matter entrusted to him."

**3.** DR 7–101(A)(1) of the Code of Professional Responsibility (1985) reads, in pertinent part: "(A) A lawyer shall not intentionally: (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules[.]"

**4.** DR 2–110(A)(2) of the Code of Professional Responsibility (1985) reads:

In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.

**5.** The respondent represented that he was experiencing "a severe lack of funds to hire typing services due to recent health care bills in excess of $130,000.00 and a general lack of client revenue."

(1984): "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."

In *Committee on Legal Ethics v. Charonis, supra,* the Committee recommended that the respondent's license to practice law be suspended for a six-month period. We chose not to follow the Committee's recommendation. Instead, we only suspended the respondent's license to practice law for two months because he refused to communicate with a client in an unemployment compensation case in violation of DR 6–101(A)(3) and DR 7–101(A)(1) of the Code of Professional Responsibility (1985), and failed to return his client's file after he was discharged in violation of DR 2–110(A)(2). In addition to the two-month suspension, we also ordered a one-year supervised practice. The purpose of the supervised plan was to provide weekly reports of the status of the respondent's cases to his supervising attorney and the State Bar so that his law practice could be monitored and corrections of his practice methods could be made when necessary.

 The respondent has alleged that he failed to comply with the supervised plan because of financial problems which prevented him from providing the status reports to his supervising attorney. Yet, there is nothing in the record which suggests that the respondent disclosed these problems to his supervising attorney or even attempted to comply with the plan. In fact, the respondent's supervising attorney and the State Bar prompted him to comply with the supervised practice plan, but the respondent ignored their requests for compliance.

Although the Committee has recommended that the respondent's license to practice law be suspended for his failure to comply with the supervised practice plan, the Committee has not stated the length of time they recommend the suspension to be in effect. In the previous complaint filed by the Committee against Mr. Charonis, we did not follow the Committee's recommendation of a six-month suspension and imposed a lesser sanction upon Mr. Charonis. However, the record indicates that Mr. Charonis made no attempts to work with his supervising attorney and the State Bar, and failed to comply with the supervised plan imposed by this Court. Therefore, based on his failure to comply with the sanction imposed by this Court, we conclude that the respondent's license to practice law should be suspended for a period of one year. We shall also require Mr. Charonis to reimburse the Committee for the costs it has incurred in connection with this proceeding. *See Committee on Legal Ethics v. Simmons,* 176 W.Va. 753, 399 S.E.2d 894 (1990); *Committee on Legal Ethics v. White,* 176 W.Va. 753, 349 S.E.2d 919 (1986); *Committee on Legal Ethics v. Pence,* 161 W.Va. 240, 240 S.E.2d 668 (1977).

License suspended one year.