459 S.E.2d 542

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**Brent E. BEVERIDGE, a Member of the West Virginia State Bar, Respondent.**

**No. 22446.**

Supreme Court of Appeals of West Virginia.

Submitted May 30, 1995.

Decided June 21, 1995.

Ellen F. Golden, Lawyer Disciplinary Counsel West Virginia State Bar, Charleston, for complainant.

John Lewis Marks, Marks & Steele, Clarksburg, for respondent.

PER CURIAM:

The Committee on Legal Ethics of the West Virginia State Bar seeks to suspend Brent E. Beveridge's license to practice law for three months. However, the Committee recommends that the suspension be stayed conditioned upon Mr. Beveridge's counsel, John Lewis Marks, agreeing to supervise Mr. Beveridge's practice for one year under certain conditions and if supervised practice is accepted, the Committee recommends a public reprimand. The Committee recommends this penalty based on a finding that Mr. Beveridge violated Rules 1.3, 1.4(b), 1.16(d) and 8.1(b) of the *Rules of Professional Conduct* [1989] in his handling of a legal matter for Garl Arnold Suder, the Complainant.

Our standard for reviewing the Committee's recommendations regarding the suspension of a lawyer for ethical violations is stated in Syl. pt. 1, *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995):

Rule 3.7 of the Rules of Lawyer Disciplinary Procedure, effective July 1, 1994, requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence. Prior cases which required that ethics charges be proved by full, preponderating and clear evidence are hereby clarified.[1]

Rule 3.7 of the *Rules of Lawyer Disciplinary Procedure* states:

*Standard of Proof.* In order to recommend the imposition of discipline of any lawyer, the allegations of the formal charge must be proved by clear and convincing evidence.

*See McGraw,* 194 W.Va. at 796, 461 S.E.2d at 858, discussing the "clear and convincing" standard of proof.

Based on our independent review of the record, we find that in this case the Committee, by clear and convincing evidence, proved that Mr. Beveridge committed ethical violations in his representation of Mr. Suder. However, the sanction[s] recommended by the Committee is too harsh and we find that an admonishment, coupled with six months supervised practice and payment of costs are the appropriate sanctions.

I

About one month before May 19, 1988, Mr. Suder met with Mr. Beveridge about an employment law matter. Thereafter Mr. Beveridge, who requested time to think about the matter, called Mr. Suder to request his employee handbook. Mr. Suder took the handbook to Mr. Beveridge's office. Mr. Beveridge testified that he telephoned Mr. Suder three to five times before May 18, 1988 when he telephoned Mr. Suder to accept the case. On May 18, 1988, Mr. Suder paid Mr. Bever-

1. The *Rules of Lawyer Disciplinary Procedure,* effective July 1, 1994, control the procedures of the Lawyer Disciplinary Board in this case be-

cause the Statement of Charges was filed on August 2, 1994 and the hearing was held on December 2, 1994. *See McGraw,* 194 W.Va. at

idge $600. On June 29, 1988, Mr. Beveridge sent Mr. Suder a copy of the complaint, along with a fee agreement. Mr. Beveridge's letter said, "Enclosed is a copy of the complaint which will be filed on your behalf. I intend on filing the lawsuit in Upshur County Circuit Court." After several telephone calls from Mr. Suder concerning the lawsuit, Mr. Beveridge filed the complaint on February 2, 1989. Mr. Suder testified that because Mr. Beveridge did not return his telephone calls, Mr. Suder "tricked" the receptionist by using a different name and talked to Mr. Beveridge. Mr. Beveridge recalled that Mr. Suder was upset when they spoke and appeared to be upset in one of Mr. Suder's messages.

Mr. Suder did not promptly return the fee agreement to Mr. Beveridge. Mr. Suder could not remember when he returned the fee agreement. Mr. Beveridge recalls that Mr. Suder returned the signed agreement in response to his February 6, 1989 letter. Mr. Beveridge's February 6, 1989 letter said: "If you wish to terminate my services, please advise me in writing, and I will refund a portion of the $600.00, which you paid."

After Mr. Suder's complaint was filed, the defendant answered and nothing further was done. Mr. Beveridge had Mr. Suder's employee handbook, payroll documents and distribution form for the 401K plan at issue. Mr. Beveridge did not engage in discovery and did not discuss undertaking discovery with Mr. Suder. Mr. Beveridge testified that, "when he [Mr. Suder] called, It's two years, what's happening with this case? You know, it wasn't like, Have you filed any discovery or I think you ought to go take so and

so's deposition. We never had any discussions one way or the other that way."

Mr. Suder testified that he never asked Mr. Beveridge to withdraw and Mr. Beveridge testified that he never filed any motion to withdraw as counsel. Mr. Beveridge's reasons for not pursuing Mr. Suder's case were: (1) The suit was in Upshur County, where he did not usually practice; (2) He thought the case would be removed to federal court; and (3) His office moved in August 1990.

On September 9, 1990, Mr. Beveridge received the following message from Mr. Suder: "Case since 1988, what are you waiting on?" Mr. Beveridge continued to do nothing. Mr. Suder testified that he could not get a telephone call through to Mr. Beveridge and that no one else would take the case.

On October 5, 1990, Mr. Suder filed a complaint with the State Bar, which was sent to Mr. Beveridge with a cover letter dated October 10, 1990 requesting a response within three weeks. Mr. Suder's complaint said, "We would like our $600.00 back so we could get another attorney." On November 1, 1990, Mr. Beveridge responded to the State Bar by acknowledging "minimal activity" on the lawsuit and offering "to terminate" his representation upon "written notification," which request had not been received. Mr. Beveridge did not send Mr. Suder a copy of the letter and did not contact Mr. Suder to determine if his representation had been terminated.

By order dated March 8, 1991, the Circuit Court of Upshur County dismissed Mr. Suder's case because no activity had occurred for two years.[2] As the attorney of record,

---

790 n. 1, 461 S.E.2d at 852 n. 1, discussing when the *Rules of Lawyer Disciplinary Procedure* apply.

2. Rule 41(b) [1992] of the *W.Va.R.Civ.P.* states, in pertinent part:

Any court in which is pending an action wherein for more than one year there has been no order or proceeding, or wherein the plaintiff is delinquent in the payment of accrued court costs, may, in its discretion, order such action to be struck from its docket; and it shall thereby be discontinued.... The court may, on motion, reinstate on its trial docket any action dismissed under this rule, and set aside any nonsuit that may [be] entered by reason of the nonappearance of the plaintiff, within three terms after entry of the order of dismissal

or nonsuit; but an order of reinstatement shall not be entered until the accrued costs are paid. *W.Va.Code* 56–8–12 [1923] provides:

Any court may, on motion, reinstate on the trial docket of the court any case dismissed, and set aside any nonsuit that may be entered by reason of the nonappearance of the plaintiff, within three terms after the order of dismissal shall have been made, or order of nonsuit entered; but any such order of reinstatement shall not be entered until the accrued costs in such case shall have been paid.

Despite the absence of express language in both the rule and *Code* section, the showing of good cause has always been required for reinstatement. *See Belington Bank v. Masketeers Co.,* 185 W.Va. 564, 408 S.E.2d 316 (1991).

Mr. Beveridge received the notice of the dismissal, but he did not notify Mr. Suder or the State Bar of the dismissal. Mr. Beveridge took no action within the three terms of circuit court during which Mr. Suder's case could have been reinstated.

On February 11, 1992, Mr. Beveridge reopened his file on Mr. Suder's case. The reopening was prompted by a January 6, 1992 letter from the State Bar enclosing a letter from Mr. Suder saying he wanted Mr. Beveridge to "go ahead with our case as planned. We hired him for that reason." Mr. Beveridge discovered that the statutory time for reinstatement had passed, but he neglected to contact Mr. Suder or to provide Mr. Suder with any information. Mr. Beveridge testified that he discussed the dismissal order with someone at the State Bar "[s]ometime after February of 1992."

Mr. Suder testified that he made numerous telephone calls to Mr. Beveridge's office but did not speak with him. In his November 1, 1990 letter to the State Bar, Mr. Beveridge said, "My telephone logs indicate a minimum of unreturned telephone calls." However, Mr. Beveridge also said that he did not return every call but was more likely to respond if the "call back" box was checked among other signals. Mr. Suder said that he continued to believe that Mr. Beveridge was representing him until he received a $600 refund by letter dated September 1, 1994.

The record contains the following communications between Mr. Beveridge and the State Bar: (1) State Bar letter dated October 10, 1990 transmitting Mr. Suder's ethical complaint; (2) Mr. Beveridge's response letter dated November 1, 1990; (3) State Bar letter dated January 6, 1992 transmitting Mr. Suder's willingness to continue, which was received by Mr. Beveridge but not answered; (4) State Bar letter dated March 11, 1992 noting no response to the Bar's January 6, 1992 letter, which apparently was not received by Mr. Beveridge; (5) Mr. Beveridge's telephone call to State Bar discussing dismissed order "[s]ometime after February of 1992;" (6) State Bar telephone call on April 27, 1993 regarding the status of Mr. Suder's case; (7) State Bar letter dated May 7, 1993, which apparently was not received by Mr. Beveridge until sent again in 1994; (8) State Bar letter dated June 24, 1993, which apparently was not received by Mr. Beveridge until sent again in 1994 requesting information about the fee agreement and the status of Mr. Suder's case; and (9) State Bar letter dated March 14, 1994 again requesting information and resending the Bar's other letters; this letter was received on March 24, 1994. Only the last letter was returned to the State Bar with the notation that Mr. Beveridge's forwarding order had expired.

After the Statement of Charges was filed on August 2, 1994, by letter dated September 1, 1994, Mr. Beveridge returned Mr. Suder's $600. A copy of the refund letter was sent to the State Bar. The record contains only the following letters from Mr. Beveridge to Mr. Suder: (1) the June 29, 1988 letter, accepting the case; (2) the February 6, 1989 letter, requesting the return of the signed fee agreement; (3) a September 24, 1990 letter, announcing a change of address; and (4) the September 1, 1994 letter, refunding the $600 retainer.

After a hearing on the matter, the Subcommittee on Legal Ethics found Mr. Beveridge's conduct had violated Rules 1.3, 1.4(b), 1.16(d) and 8.1(b) of the *Rules of Professional Conduct* [1989]. The subcommittee thought the complaint resulted from "deficiencies in the organization and management of the Respondent's law practice." Noting that Mr. Beveridge made some changes in his office procedures, the subcommittee recommended a three-month suspension, but would stay the suspension conditioned on Mr. Marks supervising Mr. Beveridge's practice for one year and fulfilling certain conditions [3] and recommended a public reprimand be giv-

---

3. The subcommittee recommended requiring the lawyer supervising Mr. Beveridge to complete a "quarterly report ... to the Office of Disciplinary [sic], using the attached 'Check List for Supervisory Attorneys,' noting that Respondent has improved his office practices particularly with regard to communications and docket controls with his clients concerning his legal representation." The Check List for Supervisory Attorneys, which was attached to the subcommittee's recommended decision specifies eight areas to be monitored with monthly documentation required.

en with the supervised practice. Mr. Beveridge maintains that the responsibility for the delay must be shared among Mr. Suder, Bar Counsel and himself and therefore, suggests that the sanction be limited to an admonishment.[4] Bar Counsel notes that because the responsibility for action rests with Mr. Beveridge, the blame for the inactivity should not be shared. Bar Counsel recommends a three-month suspension or shorter period coupled with a one-year supervised practice, subject to certain restrictions.[5]

## II

■ The *Rules of Professional Conduct*, similar to the Disciplinary Rules of the *Code of Professional Responsibility* which were replaced by the Rules, "are merely the minimum guidelines we use to judge attorney conduct." *Cometti, supra*, 189 W.Va. at 271, 430 S.E.2d at 329. Syl. pt. 9, *Cometti* states:

> "The [Rules of Professional Conduct] state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." Syllabus Point 3, *Committee on Legal Ethics v. Tatterson*, 173 W.Va. 613, 319 S.E.2d 381 (1984).

*In accord* Syl. pt. 1, *Committee on Legal Ethics v. Farber*, 185 W.Va. 522, 408 S.E.2d 274 (1991), *cert. denied*, 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992).

Recently in *McCorkle, supra*, we noted that the Committee's findings of fact are given substantial deference. We noted that the "Committee hears the testimony of the witnesses firsthand and, being much closer to the pulse of the hearing, is much better situated to resolve such issues as credibility. [Footnote omitted.]" *McCorkle*, 192 W.Va. at 290, 452 S.E.2d at 381. Because the Committee's factual findings and conclusions are given substantial deference, "[t]he burden is on the attorney at law to show that the

factual findings are not supported by reliable, probative, and substantial evidence on the whole adjudicatory record made before the Committee." *McCorkle*, 192 W.Va. at 290, 452 S.E.2d at 381.

In this case, the Committee found that Mr. Beveridge's actions violated Rules 1.3, 1.4(b), 1.16(d) and 8.1(b) of the *Rules of Professional Conduct* [1989]. Rule 1.3 provides:

> A lawyer shall act with reasonable diligence and promptness in representing a client.

Rule 1.4(b) provides:

> A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Rule 1.16(d) provides:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

Rule 8.1 provides, in pertinent part:

> An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: ...
>
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

---

4. Rule 3.15 [1994] of the *Rules of Lawyer Disciplinary Procedure* states, in pertinent part:
   > A Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the Rules of Professional Conduct or pursuant to Rule 3.14: (1) probation; (2) restitution; (3) limitation on the

nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment.

5. During oral argument, Bar Counsel supported the Committee's recommended sanction and did not seek the sanction outlined in her brief.

The first three rules cited above provide some guidelines for a lawyer's representation of a client. In this case, Mr. Beveridge violated Rule 1.3 when he failed to act with reasonable diligence and promptness. Initially, Mr. Beveridge delayed for seven months before filing Mr. Suder's complaint and thereafter, Mr. Beveridge did nothing even after the case was dismissed for inactivity.[6] Mr. Beveridge violated Rule 1.4(b) when he failed to provide Mr. Suder with sufficient information to make informed decisions. Mr. Beveridge did not return most of Mr. Suder's telephone calls, and Mr. Beveridge admitted that he failed to inform Mr. Suder of the dismissal of his case. Mr. Beveridge argues that he believed that Mr. Suder's ethical complaint terminated his employment. However, Mr. Beveridge did not attempt to clarify the status of his employment, did not officially withdraw, did not give Mr. Suder notice of the dismissal, did not return Mr. Suder's papers and property, and did not act to protect Mr. Suder's interest when Mr. Suder's case was dismissed. Mr. Beveridge violated Rule 1.16(d) when he failed to protect Mr. Suder's interests when he thought his representation was terminated. At the December 2, 1994 ethics committee hearing, Mr. Beveridge still had not returned Mr. Suder's employee handbook. Given the extensive record and Mr. Beveridge's admissions, we find that the Committee proved, by clear and convincing evidence, that Mr. Beveridge violated Rules 1.3, 1.4(b) and 1.16(d) during and at the conclusion of his representation of Mr. Suder.

■ Rule 8.1(b) requires a lawyer to cooperate with the State Bar in connection with a disciplinary matter. Syl. pt. 1, *Committee on Legal Ethics v. Martin*, 187 W.Va. 340, 419 S.E.2d 4 (1992) states:

An attorney violates West Virginia Rule of Professional Conduct 8.1(b) by failing to respond to requests of the West Virginia State Bar concerning allegations in a disciplinary complaint. Such a violation is not contingent upon the issuance of a subpoena for the attorney, but can result from the mere failure to respond to a request for information by the Bar in connection with an investigation of an ethics complaint.

*In accord* Syl. pt. 5, *Cometti, supra*. *See also*, Syl. pt. 11, *Cometti, supra*, noting that a disciplinary violation can be imposed for failure to cooperate with the Committee.

In this case, Mr. Beveridge failed to respond to the State Bar's letters of January 6, 1992 and March 14, 1994 and telephone call of April 27, 1993. Mr. Beveridge acknowledged receiving the above listed communications. Although the State Bar sent other letters that failed to elicit a response, Mr. Beveridge denied receiving these noting that his address changed several times during this case.[7] We note that even though Mr. Beveridge was aware of the ethics complaint, he failed to inform Bar Counsel directly of his address changes, but instead relied on his submission to the State Bar of his dues and continuing legal education credits, which had his return address.[8]

Finally, Mr. Beveridge alleges that the blame for the delays in Mr. Suder's case must be shared with the client and the State Bar. How could an ordinary client, who was not informed by his lawyer of the procedures or the case's status or the orders entered, be responsible? Mr. Beveridge's allegation that the disciplinary process should have caught the problem earlier and thereby saved him, refuses to recognize that he, Mr. Beveridge, has the ultimate responsibility toward the client. Although we agree that the disciplinary process needs to respond quickly to protect the public (*see Rules of Lawyer Disciplinary Procedure*, adopted May 25, 1994,

---

6. We note that the attorney-client relationship between Mr. Beveridge and Mr. Suder was established on May 18, 1988 when Mr. Beveridge accepted the case and Mr. Suder paid Mr. Beveridge a $600 retainer.

7. Although the other letters from Bar Counsel were not returned, the Committee did not prove by clear and convincing evidence that Mr. Beveridge received them.

8. Because Mr. Beveridge acknowledged that he failed to respond to several communications from Bar Counsel, we need not decide if failure to report a change of address directly to Bar Counsel while a complaint is pending is a violation of Rule 8.1(b).

effective July 1, 1994), the evidence shows that Mr. Beveridge alone was responsible for the delays in this case.

## III

■ Although the Committee's factual findings and conclusions are given substantial deference, "[t]his Court reviews *de novo* questions of law and the appropriateness of a particular sanction." *McCorkle, supra,* 192 W.Va. at 289, 452 S.E.2d at 380. Syl. pt. 3, *McCorkle,* states:

A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Indeed, the Committee's conclusions and recommendations are not binding on this Court. "Consistent with the supervisory function mandated by Section 3 of Article VIII of our Constitution, this Court independently examines each case on its own merits in determining what, if any, disciplinary action is warranted." *McCorkle, supra,* 192 W.Va. at 290, 452 S.E.2d at 381. In Syl. pt. 3, *Committee on Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985), we stated:

This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law.

*In accord* Syl. pt. 2, *Committee on Legal Ethics v. Sheatsley,* 192 W.Va. 272, 452 S.E.2d 75 (1994); Syl. pt. 10, *Cometti, supra;* Syl. pt. 1, *Committee on Legal Ethics v. Craig,* 187 W.Va. 14, 415 S.E.2d 255 (1992); Syl. pt. 6, *Farber, supra;* Syl. pt. 1, *Commit-tee on Legal Ethics v. Charonis,* 184 W.Va. 268, 400 S.E.2d 276 (1990).

■ Some of the major factors considered in determining a disciplinary penalty were outlined in Syl. pt. 3, *Committee on Legal Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987):

In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

*In accord* Syl. pt. 4, *McCorkle, supra:* Syl. pt. 2, *Craig, supra;* Syl. pt. 5, *Committee on Legal Ethics v. Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989).

As stated in Syl. pt. 2, *Committee on Legal Ethics v. Mullins,* 159 W.Va. 647, 226 S.E.2d 427 (1976), *overruled on another matter,* Syl. pt. 11, *Cometti, supra,* this Court endeavors to make an individualized assessment of the sanction rather than follow a schedule of punishment:

In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances in each case, including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate, and when the committee on legal ethics initiates proceedings before this Court, it has a duty to advise this Court of all pertinent facts with reference to the charges and the recommended disciplinary action.

*In accord* Syl. pt. 4, *Roark, supra;* Syl. pt. 2, *Committee on Legal Ethics v. Higinbotham,* 176 W.Va. 186, 342 S.E.2d 152 (1986).

After an independent review of the record, we find that the subcommittee's factual findings are supported by clear and convincing evidence. After careful consideration of the facts, the serious nature of Mr. Beveridge's actions as measured against the office procedure changes instituted by Mr. Beveridge, we find that Mr. Beveridge's conduct de-

mands to be sanctioned, however, the subcommittee's recommended sanction[s] are not appropriate under the facts and circumstances of this case. Rule 3.16 [1994] of the *Rules of Lawyer Disciplinary Procedure* states:

> In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court or Board shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

We apply these four factors within the context of the subcommittee's finding that the root causes of Mr. Beveridge's problems are "deficiencies in the organization and management of the respondent's law practice." Accordingly, since the lack of any organization and management is the cause of the problem, then the most effective sanctions to be imposed are to admonish Mr. Beveridge for his past conduct, coupled with six months of supervised practice and payment of costs. During the supervised practice, Mr. Beveridge must meet the conditions set forth in the Board's recommended decision pertaining to supervised practice. *See supra*, note 3 for the supervised practice conditions.

For the above stated reasons, Brent E. Beveridge is admonished and is required to have his practice monitored for six months and to pay the costs of the proceedings.

Admonition, six months supervised practice and costs.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.