IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2025 Term

**FILED**

**November 12, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 24-129

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

BENJAMIN R. FREEMAN,
A Member of the West Virginia State Bar,
Respondent.

_____

Lawyer Disciplinary Proceeding
Nos. 22-05-312, 22-01-355, 23-01-091, 23-06-199, 23-06-308, 23-06-431, and 24-06-034

LAW LICENSE SUSPENDED AND OTHER SANCTIONS
_____

Submitted:  October 7, 2025
Filed:  November 12, 2025

Rachael L. Fletcher Cipoletti, Esq.
Chief Lawyer Disciplinary Counsel
Lauren Hall Knight, Esq.
Lawyer Disciplinary Counsel
Office of Lawyer Disciplinary Counsel
Charleston, West Virginia
Counsel for Petitioner

Benjamin R. Freeman, Esq.
Hurricane, West Virginia
Self-Represented Respondent

SENIOR STATUS JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICES BUNN and EWING dissent and reserve the right to file separate opinions.

SYLLABUS BY THE COURT

1.      "'This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law.' Syllabus point 3, *Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984)."  Syl. Pt. 2, *Lawyer Disciplinary Board v. Cain*, 245 W. Va. 693, 865 S.E.2d 95 (2021).

2.      "'A *de novo* standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board ("HPS")] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [HPS's] recommendations while ultimately exercising its own independent judgment.  On the other hand, substantial deference is given to the [HPS's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.' Syllabus point 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994)."  Syl. Pt. 1, *Lawyer Disciplinary Board v. Cain*, 245 W. Va. 693, 865 S.E.2d 95 (2021).

3.      "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows:  'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board

[Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors." Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

4. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

5. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

6. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to

disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syl. Pt. 3, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

7. "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syl. Pt. 3, *Committee on Legal Ethics of the W. Va. State Bar v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

HUTCHISON, Justice:

Between August 2022 and January 2024, the Office of Lawyer Disciplinary Counsel ("ODC") received numerous complaints and referrals regarding Benjamin R. Freeman. The complaints from Mr. Freeman's clients alleged, among other things, failure to communicate, inaction, and failure to refund legal fees. During this time period, the ODC also received four referrals from this Court forwarding rule to show cause orders regarding Mr. Freeman's failure to perfect appeals on behalf of his clients in five abuse and neglect cases. Formal charges were filed against Mr. Freeman on or about March 7, 2024. Following a hearing, the Hearing Panel Subcommittee ("HPS") of the Lawyer Disciplinary Board ("LDB") recommended that Mr. Freeman's law license be suspended for eighteen months, along with other sanctions. The ODC objects to the HPS's recommendation and seeks annulment of Mr. Freeman's law license. Mr. Freeman, on the other hand, argues that the appropriate sanction should be probation, reprimand, or admonishment.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we adopt the recommendations of the HPS.

## I. FACTUAL AND PROCEDURAL HISTORY

Mr. Freeman was admitted to the West Virginia State Bar in 2001, and he is a solo practitioner in Hurricane, West Virginia. Prior to going into private practice in 2017,

1

Mr. Freeman was employed with the West Virginia Attorney General's Office for two years and served as a Kanawha County Assistant Prosecuting Attorney for fourteen years. On or about March 7, 2024, a seven-count Statement of Charges was filed against Mr. Freeman, and the HPS conducted a hearing on July 16, 2024. A summary of the complaints against Mr. Freeman and the HPS's findings are set forth below.

### A. Count I – Complaint of Marcus L. Young

On June 7, 2022, Mr. Freeman was appointed to represent Mr. Young in post-conviction habeas corpus proceedings in the Circuit Court of Kanawha County. Mr. Freeman was directed to file an amended petition for habeas corpus relief no later than 120 days following entry of the appointment order. On August 19, 2022, Mr. Young filed an ethics complaint against Mr. Freeman with the ODC, alleging that Mr. Freeman had failed to meet him or otherwise communicate with him in the two months since his appointment. The ODC sent Mr. Freeman a copy of Mr. Young's complaint and directed him to file a verified response within twenty (20) days. After no response was received, the ODC mailed a second letter to Mr. Freeman directing him to file a response by October 17, 2022.[1]

---

[1] This letter, and each of the letters mailed to Mr. Freeman by certified mail, advised Mr. Freeman that failure to respond to a request from the ODC constituted a violation of Rule 8.1(b), pursuant to *Committee on Legal Ethics v. Martin*, 187 W. Va. 340, 419 S.E.2d 4 (1992). Rule 8.1(b) of the West Virginia Rules of Professional Conduct provides, in pertinent part that "a lawyer . . . in connection with a disciplinary mater, shall not . . . (continued . . .)

Mr. Freeman responded on November 7, 2022, and indicated that he was obtaining necessary documents and transcripts from the circuit court and was working on Mr. Young's amended petition. Mr. Freeman attributed his delay in communicating with Mr. Young to his demanding schedule, complicated by a serious hand injury and family issues related to COVID-19.

In a letter received on January 11, 2023, Mr. Young asserted that Mr. Freeman had yet to meet with him to discuss the case. Although Mr. Freeman responded to Mr. Young's January 11, 2023, letter, he failed to respond to the ODC's requests for additional information, which were made in March and April 2023. Due to his failure to respond, Mr. Freeman was personally served with an investigative subpoena duces tecum, which directed him to appear at the ODC on August 30, 2023, to provide a sworn statement and to produce and permit inspection of all documents within his control regarding Mr. Young's complaint.

Mr. Freeman appeared for his sworn statement on August 30, 2023. At that time, Mr. Freeman had still not met with Mr. Young. On the following day, the ODC requested that Mr. Freeman provide certain additional information within twenty (20)

knowingly fail to respond to a lawful demand for information from . . . disciplinary authority[.]"

3

days.[2]  Mr. Freeman did not respond to this request, and he also did not respond to a subsequent request on October 11, 2023.  The ODC sent another request by email on October 25, 2023, and on October 26, 2023, the ODC received the requested information regarding Mr. Young's case.  Also, in October 2023, the ODC received information from the West Virginia Division of Corrections and Rehabilitation, which showed that between June 7, 2022, and October 24, 2023, Mr. Young had attempted to call Mr. Freeman thirty-one (31) times, but none of the calls were accepted by Mr. Freeman.

In January 2024, Mr. Young indicated that he did not want Mr. Freeman to file his amended petition.  The ODC directed Mr. Freeman to contact Mr. Young to discuss the matter with him.  Because an amended petition had still not been filed, the circuit court set Mr. Young's case for a hearing on February 15, 2024.  Thereafter, Mr. Freeman filed an Amended Petition for Writ of Habeas Corpus, which only alleged ineffective assistance of counsel.  On or about June 10, 2024, Mr. Freeman was relieved as counsel, and substitute counsel was appointed for Mr. Young.

---

[2] This request also sought additional information related to other complaints referenced in this disciplinary proceeding.

4

Based on Mr. Freeman's conduct, the HPS found that he violated Rules 1.3, 1.4(a)(3) and (4), 3.4(c), 8.4(d),[3] and 8.1(b) of the West Virginia Rules of Professional Conduct.[4]

**B.  *Counts II, IV, VI, and VII – Complaints of the ODC***

Counts II, IV, VI, and VII arise from complaints opened by the ODC after it received referrals from this Court related to Mr. Freeman's failure to timely perfect appeals on behalf of his clients in five abuse and neglect cases.[5]

---

[3] Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

Rules 1.4(a)(3) and (4), require a lawyer to "keep the client reasonably informed about the status of the matter" and "promptly comply with reasonable requests for information."

Rule 3.4(c) provides, in pertinent part, that a lawyer "shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

Rule 8.4(d) provides, in pertinent part, that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice."

[4] *See* note 1, *supra.*

[5] Count II relates to *In re K.H.*, No. 22-0408 and *In re B.S., M.S., and H.S.*, No. 22-0413.  Count IV relates to *In re A.B. and J.S.*, No. 23-140.  Count VI relates to *In re L.T., L.T, and J.T.*, No. 23-516.  Count VII relates to *In re A.B.*, No. 23-400.

The HPS found that in addition to failing to timely perfect the appeals in all five abuse and neglect cases, Mr. Freeman also failed to timely respond to the ODC's initial requests for verified responses to its complaints in these matters. With respect to Count II, Mr. Freeman eventually responded to the ODC and claimed that he was delayed in perfecting the appeals due to a hand injury and his demanding schedule. After failing to respond to two requests made by the ODC in Count IV, Mr. Freeman was served with an investigative subpoena duces tecum directing him to appear for a sworn statement. In his sworn statement, Mr. Freeman testified that he thought he had perfected the appeal months earlier and only became aware that the appeal had not been perfected after he received the ODC's subpoena. With respect to Count VII, the HPS noted that Mr. Freeman was held in contempt for his failure to perfect the appeal, and he was denied eligibility for any court-appointed cases until the disciplinary action was concluded.

Based on Mr. Freeman's conduct with respect to the abuse and neglect cases, the HPS found that Mr. Freeman violated Rules 1.3, 3.2, 3.4(c), 8.1(b), and 8.4(d) of the West Virginia Rules of Professional Conduct.[6]

C. *Count III – Complaint of Marjorie L. Allison*

---

[6] Rule 3.2 provides that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client."

6

On March 13, 2023, Marjorie L. Allison filed a complaint against Mr. Freeman. According to Ms. Allison, she hired Mr. Freeman in August 2021 to petition the Family Court of Putnam County to obtain visitation with her great niece and paid him a retainer of $2,200.00 by personal check. After months of nothing happening in her case, Ms. Allison requested that Mr. Freeman refund her retainer. Although he initially agreed to refund her retainer, he failed to do so.

By letter dated March 16, 2023, the ODC sent Mr. Freeman a copy of Ms. Allison's complaint and directed him to file a verified response within twenty (20) days. No response was received, and a second letter, dated April 18, 2023, was mailed to Mr. Freeman, by first class and certified mail, directing him to file a response by May 2, 2023.[7]

Due to his failure to respond, on August 2, 2023, Mr. Freeman was personally served with an investigative subpoena duces tecum, which directed him to appear at the ODC on August 30, 2023, to provide a sworn statement, and to produce and permit inspection of all documents within his control regarding Ms. Allison's complaint.

In his sworn statement on August 30, 2023, Mr. Freeman testified that Ms. Allison's retainer was based on a fee agreement of $200.00 per hour and that he deposited

---

[7] This letter advised Mr. Freeman that failure to respond to a request from the ODC constitutes a violation of Rule 8.1(b), pursuant to *Committee on Legal Ethics v. Martin*, 187 W. Va. 340, 419 S.E.2d 4 (1992).

the check into his client trust account at City National Bank.[8]  He also testified that once

he felt that he had completed roughly ten (10) hours of work, he transferred the money to

his general operating account at City National Bank. Mr. Freeman stated that he spent

several hours investigating Ms. Allison's case and researching the issues, but he could not

find the opposing party so there was "no point" in filing the petition.  Therefore, he intended

to refund the retainer to avoid a bad review.  Mr. Freeman stated that he thought he had

sent Ms. Allison a refund check, but he had no record of it being cashed, so he planned to

send another check.

Following his sworn statement, the ODC sent multiple requests to Mr.

Freeman asking him to provide additional information, but he did not respond.  The ODC

eventually received the requested information on October 26, 2023.  The documents

provided by Mr. Freeman included an unsigned fee agreement with Ms. Allison, which

provided that Ms. Allison would pay a $2,200.00 retainer which would be billed by Mr.

Freeman at a rate of $250.00 per hour.[9]  Also included in the documents was a time sheet,

reflecting that Mr. Freeman billed 8.7 hours for work performed on Ms. Allison's case.

---

[8] Throughout these proceedings, the terms "client trust account" and "IOLTA account" are used interchangeably in reference to the same bank account.  Respondent testified at his sworn statement that he maintained one client trust account which is the account at City National Bank labeled "IOLTA Account."  "'IOLTA' is an acronym for Interest on Lawyer Trust Accounts."  *L&D Investments Inc. v. Antero Resources Corporation*, 248 W. Va. 83, 86 n.3, 887 S.E.2d 208, 211 n.3 (2023) (internal citation omitted).

[9] As noted, Mr. Freeman testified in his sworn statement that he agreed to bill Ms. Allison at a rate of $200.00 per hour.

The last work on the case reflected on the time sheet was from April 2022. Additionally, Mr. Freeman provided a copy of an unsigned, undated letter to Ms. Allison, stating simply "I apologize. I believed that this check had been mailed previously. However, I do not have a cashed check from you. See enclosed." No copy of a check accompanied the unsigned letter. Lastly, Mr. Freeman provided emails with Ms. Allison which reflect that in November 2022, Ms. Allison stated, "It's been over a year and I still haven't heard what's going on. Can you please give me an update?" When she received no response, in December 2022, she demanded a refund of her retainer, and later in November 2023, she advised that she would be willing to accept a $1,800.00 refund.

In January 2024, the ODC obtained an investigative subpoena duces tecum from this Court to City National Bank for records from any accounts maintained by Mr. Freeman and/or Freeman Law Offices from July 1, 2021 to the present. A review of those records showed that, contrary to Mr. Freeman's sworn testimony, he did not deposit Ms. Allison's check into his client trust account. Instead, on August 23, 2021, Mr. Freeman deposited Ms. Allison's check into his operating account, which contained Mr. Freeman's personal funds and was used by Mr. Freeman for his personal use. At the time Mr. Freeman deposited Ms. Allison's $2,200.00 check, the balance of his operating account was -$632.65. Following Mr. Freeman's deposit of Ms. Allison's check into his operating account, on that same date, (a) Mr. Freeman was assessed a wire transfer fee of $15.00, (b) Mr. Freeman withdrew $200.00 cash, (c) Mr. Freeman had four charges from PayPal for

9

"GAMINGFUNDS" totaling $192.24, and (d) Mr. Freeman wrote a $1,350.00 check to City National Bank.[10]

Although Mr. Freeman's IOLTA account was closed in December 2021, Mr. Freeman testified that he was not aware that the account had been closed until he received the Statement of Charges in 2024 because he did not typically hold client money. In his testimony, Mr. Freeman admitted that the fee agreement was never signed by Ms. Allison, and that he had deposited Ms. Allison's retainer check into his business account instead of his IOLTA account. Mr. Freeman further admitted that his sworn statement on August 30, 2023, was incorrect, that he must have been thinking of something else, and that he had not reviewed bank records prior to giving his sworn statement. Mr. Freeman admitted that, at the time he deposited Ms. Allison's check into his operating account, he had only performed 1.8 hours work on the case. With respect to the expenditures on August 23, 2021, following his deposit of Ms. Allison's check, Mr. Freeman admitted that the PayPal charges were for personal spending, and the check to City National Bank was a payment toward a personal loan.

At the final hearing before the HPS in July 2024, Mr. Freeman provided Ms. Allison with a refund check and an apology.

---

[10] Although the check to City National Bank was dated August 24, 2021, bank records show that it was processed on August 23, 2021.

Based on Mr. Freeman's conduct, the HPS found that he violated Rules 1.4 (a)(3), 1.15(a), 1.15(c), 8.1(a), 8.4(c), and 8.4(d).[11]

### D. *Count V – Complaint of Garland L. Murray*

On or about April 26, 2023, Mr. Freeman was appointed to represent Mr. Murray in post-conviction habeas corpus proceedings in the Circuit Court of Kanawha County, and he was directed to file an amended petition for habeas corpus relief on Mr. Murray's behalf. On July 21, 2023, Mr. Murray filed an ethics complaint against Mr. Freeman, alleging that, despite multiple attempts to contact Mr. Freeman, Mr. Freeman had not communicated with him since his appointment in April 2023.

By letter dated July 24, 2023,[12] the ODC sent Mr. Freeman a copy of Mr. Murray's complaint and directed him to file a verified response within twenty (20) days.

---

[11] Rule 1.15 addresses the safekeeping of property.

Rule 8.1(a) provides that a lawyer "shall not knowingly make a false statement of material fact" in connection with a disciplinary matter.

Pursuant to Rule 8.4(c), it is professional misconduct for a lawyer to "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[12] This letter and all other correspondence to Mr. Freeman referenced herein were sent to his post office box in Hurricane, West Virginia. During his sworn statement on August 30, 2023, Mr. Freeman confirmed that this was his correct address. Additionally, in the referrals sent to the ODC from this Court, counsel indicated that this address is also the same address on file with the State Bar for Mr. Freeman.

Mr. Freeman did not respond to the first request so a second letter, dated August 25, 2023, was mailed to Mr. Freeman directing him to file a response by September 8, 2023.[13]

On September 13, 2023, Mr. Freeman provided a response indicating that he had spoken to Mr. Murray and Mr. Murray's wife and that he had filed a motion to extend the filing deadline. Also, by letter received on September 13, 2023, Mr. Murray advised the ODC that Mr. Freeman has postponed his case twice, failed to file motions on his behalf and failed to answer phone calls, emails and messages. Mr. Murray requested that Mr. Freeman be removed from his case.

On September 19, 2023, the ODC sent Mr. Freeman a copy of the correspondence and directed him to file a verified response within twenty (20) days. On October 16, 2023, Mr. Freeman provided an amended, verified response, stating that he had met with Mr. Murray three times, was working on the amended petition, and had had some disagreements with Mr. Murray about what to include in the amended petition.

Documents from the underlying court file show that Mr. Freeman filed two motions seeking a continuance, and that the Court set a final deadline of October 1, 2023, with an omnibus habeas hearing to be held on December 20, 2023. Additionally, Mr.

---

[13] This letter advised Mr. Freeman that failure to respond to a request from the ODC constitutes a violation of Rule 8.1(b), pursuant to *Committee on Legal Ethics v. Martin*, 187 W. Va. 340, 419 S.E.2d 4 (1992).

Murray sent the court numerous letters regarding Mr. Freeman and requested that Mr. Freeman be removed from his case. The court advised that the issue would be taken up at the hearing on December 20, 2023. The case came on for hearing on December 20, 2023, but Mr. Freeman failed to appear. The circuit court noted that Mr. Freeman failed to abide by the court's scheduling order as well as the deadlines set forth in the orders granting his motions for extension of time. As a result, the court removed Mr. Freeman and appointed new counsel for Mr. Murray.

Mr. Freeman testified before the HPS that he did not file the amended petition, as ordered, because he did not believe he could effectively represent Mr. Murray after Mr. Murray filed multiple ethics complaints against him and wanted him removed from the case. Mr. Freeman also testified that he was not sure why the December 20, 2023, hearing was not on his calendar, that he did not recall receiving the order entered after that hearing, and that he did not know that he was removed until the disciplinary hearing held in this case.

Based on Mr. Freeman's conduct, the HPS concluded that he violated Rules 1.3, 3.4(c), and 8.4(d).

E. **Sanctions**

Based upon its finding of clear and convincing evidence that Mr. Freeman committed thirty-six (36) violations of the West Virginia Rules of Professional Conduct,

the HPS recommended that Mr. Freeman's license to practice law be suspended for eighteen months, with additional sanctions.[14]  On February 5, 2025, the ODC objected to the HPS's recommendation that Mr. Freeman's license to practice law be suspended for eighteen months.  Instead, the ODC advocated for annulment of Mr. Freeman's law license. Mr. Freeman responded seeking a sanction that "fall[s] short of suspension or annulment."

## II.  STANDARD OF REVIEW

It is well-established that "'[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law.' Syllabus point 3, *Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984)."  Syl. Pt. 2, *Lawyer Disciplinary Board v. Cain*, 245 W. Va. 693, 865 S.E.2d 95 (2021).  With respect to the HPS's recommendations:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board ('HPS')] as to questions of law, questions of application of the law to the

---

[14] In addition to an eighteen month suspension, the ODC also recommended that (1) Mr. Freeman be ordered to comply with Rule 3.28 of the West Virginia Rules of Lawyer Disciplinary Procedure regarding suspended or disbarred lawyers and promptly surrender all papers and property to clients to which his clients are entitled; (2) Mr. Freeman be required to file a petition for reinstatement and, prior to the filing of such petition, complete twelve hours of continuing legal education (CLE) credit devoted solely to office management and ethics; and (3) Mr. Freeman be ordered to reimburse the costs of this disciplinary proceeding.

14

> facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [HPS's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [HPS's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record. Syllabus point 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

*Id.* at 695, 865 S.E.2d at 97, Syl. Pt. 1 .

### III. DISCUSSION

The parties do not dispute the relevant facts or the HPS's finding that Mr. Freeman committed thirty-six (36) violations of the West Virginia Rules of Professional Conduct,[15] and the record supports the adoption of the HPS's findings of fact, as well as the corresponding rule violations. However, Mr. Freeman and the ODC disagree with the HPS's recommended sanction. The ODC argues that the appropriate sanction for Mr. Freeman's conduct is annulment of his law license. Mr. Freeman argues that the recommendation of the HPS and the position of the ODC are "too harsh" and that any sanction imposed should "fall short of suspension or annulment." Therefore, the sole issue before the Court is the appropriate sanction for Mr. Freeman's misconduct.

---

[15] The ODC does contest the HPS's lack of a finding regarding Mr. Freeman's mental state when he testified falsely at his sworn statement regarding the deposit of Ms. Allison's retainer check into his operating account. The ODC contends that the HPS should have found that Mr. Freeman acted intentionally in making the false statement.

As we have noted before, "[t]he Rules of Lawyer Disciplinary Procedure contemplate a variety of possible disciplinary sanctions, ranging in severity from an admonishment to law license annulment[.]" *Lawyer Disciplinary Board v. Schillace*, 247 W. Va. 673, 683, 885 S.E.2d 611, 621 (2022).

> A Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the Rules of Professional Conduct . . . . (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment.

W. Va. R. Law. Disc. P. 3.15.

We are mindful that our standard of review requires "substantial deference" to the HPS's resolution of factual disputes. *Cain,* 245 W. Va. at 695, 865 S.E.2d at 97, Syl. Pt. 1, in part. However, in determining the appropriate sanctions, we are guided by the factors set forth in Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure, as reiterated in Syllabus Point four of *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998):

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal

> system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

*Id*. We now turn to the factors that must be considered in crafting the appropriate sanction.

A.      DUTIES OWED TO CLIENTS, THE PUBLIC, THE LEGAL SYSTEM, OR THE PROFESSION

The first factor requires this Court to evaluate whether Mr. Freeman violated duties to his client, the public, the legal system, or to the legal profession. *Id.* We have explained:

> A lawyer owes an ethical duty to clients including the duty of candor, loyalty, diligence, and competence. Lawyers also owe duties to the public who rely on lawyers to protect their interests. The general public deserves lawyers with the highest standards of honesty and integrity. As officers of the court, lawyers owe duties to the legal system whereby they must conduct themselves within the bounds of the law and abide by the rules of substance and procedure which afford the administration of justice. As to the legal profession, lawyers owe an ethical duty to maintain the integrity of the profession.

*Lawyer Disciplinary Board v. Blyler*, 237 W. Va. 325, 341, 787 S.E.2d 596, 612 (2016). Mr. Freeman clearly violated duties owed to his clients, to the public, to the legal system and to the legal profession. The HPS found that the evidence in this case "clearly and convincingly" demonstrated that Mr. Freeman committed multiple violations of the West Virginia Rules of Professional Conduct. Specifically, the HPS found that Mr. Freeman (1) failed to act with reasonable diligence and promptness in representing Mr. Murray, Mr.

17

Young, and his clients in the five abuse and neglect appeals; (2) failed to keep his clients Mr. Murray and Ms. Allison reasonably informed about the status of their cases; (3) failed to promptly comply with Mr. Murray's reasonable requests for information; (4) failed to make reasonable efforts to expedite litigation consistent with the interest of his clients in five abuse and neglect appeals; (5) knowingly disobeyed an obligation under the rules of a tribunal with respect to Mr. Murray, Mr. Garland, and the five abuse and neglect clients; (6) knowingly failed to respond to lawful demands for information from the ODC regarding Mr. Murray, Ms. Allison, and two of his abuse and neglect clients; (7) engaged in conduct that is prejudicial to the administration of justice in all seven counts; and, finally, with respect to Ms. Allison, (8) engaged in conduct involving dishonesty, fraud, deceit or misrepresentation; (9) failed to hold the retainer separate from his own property; (10) withdrew fees paid in advance prior to such fees being earned; and (11) knowingly made a false statement of material fact in connection with a disciplinary matter.

Mr. Freeman failed his clients, the public, the legal system, and the legal profession. As we have previously noted, "[t]he public 'depends on lawyers to navigate the legal system,' so for the same reasons [Mr. Freeman] violated duties to his clients, he violated duties to the public." *Lawyer Disciplinary Board v. Curnutte*, 251 W. Va. 839, -- -, 916 S.E.2d 681, 692 (2025) (internal citation omitted). Further, "subverting the disciplinary process by failing to respond to ODC's lawful requests for information constituted breaches of his duties to the legal system and the legal profession." *Id.*

18

B.    CULPABLE MENTAL STATE

We turn next to the second factor established in Rule 3.16 of the Rules of Lawyer Disciplinary Procedure, which requires us to consider whether Mr. Freeman acted "intentionally, knowingly, or negligently."    The HPS concluded and the record demonstrates that Mr. Freeman acted "intentionally, knowingly and/or with a careless disregard" with respect to his numerous violations.  The HPS found, among other things, that Mr. Freeman (1) testified falsely at his sworn statement; (2) acted knowingly by failing to keep Ms. Allison's fees in a client trust account; (3) acted with "extreme carelessness if not knowingly" by failing to communicate with Mr. Young; (4) acted with "extreme carelessness if not knowingly" by failing to appear at Mr. Murray's omnibus evidentiary hearing; (5) acted "carelessly if not knowingly" by failing to comply with this Court's deadlines in the underlying abuse and neglect cases; (6) acted knowingly by failing to respond to the ODC's requests for information; and (7) acted negligently when he provided Ms. Allison with incorrect information by advising her that he would need to refile her petition despite having never filed a petition on her behalf.

We agree with the HPS and find that Mr. Freeman acted knowingly by disregarding his clients' interests and orders of the Circuit Court of Kanawha County and

19

this Court. Given his numerous violations, we also find that Mr. Freeman acted negligently in some instances.[16]

## C.    INJURY

Next, we examine the actual or potential injury caused by Mr. Freeman's misconduct. The HPS found that Mr. Freeman's misconduct "caused harm to his clients, the public, the legal system and the legal profession." We agree.

Mr. Freeman's failure to communicate with his clients and timely draft amended petitions in the habeas corpus cases of Mr. Young and Mr. Murray caused undue delays in the resolution of those cases. Mr. Freeman's failure to keep Ms. Allison's legal retainer fees in a client trust account led to Mr. Freeman spending Ms. Allison's fee before it was earned. Further, despite his pledges to refund Ms. Allison's legal fees, Mr. Freeman ultimately waited until the day of his disciplinary hearing to provide her with a refund check. Mr. Freeman's failure to comply with deadlines in the abuse and neglect cases "placed an administrative burden on the Office of the Clerk" and more importantly, delayed permanency for the children involved in those abuse and neglect cases. "[W]e have emphasized that case delay and understandable frustration with the system establish actual injury." *Lawyer Disciplinary Board v. Schillace*, 247 W. Va. 673, 685, 885 S.E.2d 611,

---

[16] For example, we agree with the HPS that Mr. Freeman acted negligently in providing Ms. Allison with incorrect information about her case when he indicated that he needed to refile her petition.

20

623 (2022) (citation omitted). Finally, Mr. Freeman's failure to comply with the deadlines in the abuse and neglect cases caused potential injury as the delays could have resulted in the dismissal of the abuse and neglect appeals.

D.     AGGRAVATING OR MITIGATING FACTORS

We must now examine Mr. Freeman's misconduct in light of the existence of aggravating and mitigating factors. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline imposed." Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003). The HPS found three aggravating factors: (1) substantial experience in the practice of law; (2) pattern of misconduct; and (3) multiple offenses. There appears to be no dispute about the existence of these aggravating factors. Mr. Freeman has been practicing law for over twenty (20) years. The pattern of misconduct is evident in his repeated failure to comply with deadlines in the habeas corpus and abuse and neglect cases, and his failure to respond to numerous requests made by the ODC. Finally, Mr. Freeman clearly committed multiple offenses.

"Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." *Id.* at 209, 579 S.E.2d at 550, Syl. Pt. 2. As we have explained:

> [m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1)

21

absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

*Id.* at 210, 579 S.E.2d at 551, Syl. Pt. 3. The HPS found three mitigating factors: (1) absence of a prior disciplinary record; (2) imposition of other penalties and sanctions; and (3) remorse. Prior to this case, Mr. Freeman had not been the subject of discipline by this Court. During the pendency of this case, this Court denied Mr. Freeman eligibility for any court-appointed cases until the ODC's investigation into this case and any resulting disciplinary action was concluded. The HPS also concluded that Mr. Freeman had expressed remorse by acknowledging his misconduct and apologizing to Ms. Allison.[17]

E.      APPROPRIATE SANCTION

Before the HPS, the ODC argued that Mr. Freeman's law license should be annulled, and Mr. Freeman argued that the mitigating factors in his case should have resulted in probation and/or an admonishment. The HPS concluded that neither proposed

---

[17] The ODC agrees that the HPS "correctly found that [Mr. Freeman's] absence of a prior disciplinary record, remorse, and the imposition of other penalties or sanctions were mitigating factors present in this case." The ODC noted, however, that Mr. Freeman's reimbursement of Ms. Allison's fee should not justify a reduction in the discipline to be imposed pursuant to *Lawyer Disciplinary Board v. Battistelli*, 206 W. Va. 197, 523 S.E.2d 257 (1999), which held that "[t]he repayment of funds wrongfully held by an attorney does not negate a violation of a disciplinary rule." *Id.* at Syl. Pt. 8, in part.

22

sanction "seem[ed] to promote a result which effectively punishes [Mr. Freeman] and protects the public adequately for the legal missteps which were serious in nature and also numerous[.]"[18]

Mr. Freeman does not dispute the HPS's findings of fact. We give substantial deference to those findings, and because we determine that they are "supported by reliable, probative, and substantial evidence on the whole record[,]" Syl. Pt. 3, in part, *McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994), we adopt the HPS's findings of fact. Further, upon our *de novo* review of the record, we also adopt the HPS's conclusions of law.

The HPS found that Mr. Freeman violated "numerous" Rules of Professional Conduct and that his conduct warrants a "substantial sanction." We agree. As is often the case in lawyer disciplinary matters, the "dispute lies with the propriety of the HPS's recommended sanction[.]" *Lawyer Disciplinary Board v. Hunter,* 249 W. Va. 55, 66, 894 S.E.2d 532, 543 (2023). Ultimately, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law.' Syllabus point 3, *Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984)." Syl. Pt. 2, *Cain*, 245 W. Va at 695, 865 S.E.2d at 97. Our decision in this regard is guided by the factors established in

---

[18] The HPS found the ODC's request for annulment lacked mercy. It also found that that Mr. Freeman requested "very little punishment, which [it felt was] warranted" in this case.

Rule 3.16 of the Rules of Lawyer Disciplinary Procedure but with the understanding that "[t]here is no 'magic formula' for this Court to determine how to weigh the host of mitigating and aggravating circumstances to arrive at an appropriate sanction[.]" *Lawyer Disciplinary Board v. Sirk*, 240 W. Va. 274, 282, 810 S.E.2d 276, 284 (2018).

We begin by acknowledging that several of Mr. Freeman's violations, standing alone, warrant suspension. For example, we have suspended lawyers who failed to comply with this Court's orders. *See Lawyer Disciplinary Board v. Conner*, 234 W. Va. 648, 769 S.E.2d 25 (2015) (lawyer who failed to perfect an appeal and was held in contempt by this Court received a ninety-day suspension). Likewise, lawyers who knowingly made false statements to the ODC have been suspended for periods ranging from months to years. *See Lawyer Disciplinary Board v. Atkins*, 243 W. Va. 246, 842 S.E.2d 799 (2020) (lawyer who failed to safeguard client funds and knowingly made a false statement to the ODC during his sworn statement was suspended for nine months); *Lawyer Disciplinary Board v. Haught*, 233 W. Va. 185, 757 S.E.2d 609 (2014) (lawyer who failed to properly deposit client funds and lied to the ODC about how he handled the funds, among other things, was suspended for one year); *Lawyer Disciplinary Board v. Grindo*, 243 W. Va. 130, 842 S.E.2d 683 (2020) (lawyer who overbilled the Public Defender System then lied to the Public Defender System and the ODC was suspended for two years).

In support of its argument that annulment is the appropriate sanction, the ODC understandably focuses on the misappropriation of Ms. Allison's retainer. As we

24

have noted, "[t]his Court, like most courts, proceeds from the general rule that, absent compelling extenuating circumstances, misappropriation or conversion by a lawyer of funds entrusted to his/her care warrants disbarment." Syl. Pt. 5, in part, *Lawyer Disciplinary Counsel v.* Jordan, 204 W. Va. 495, 513 S.E.2d 722 (1998); *accord Lawyer Disciplinary Board v. Greer*, 252 W. Va. 1, 917 S.E.2d 1 (2024); *Lawyer Disciplinary Board v. Wheaton*, 216 W. Va. 673, 684, 610 S.E.2d 8, 19 (2004); *Lawyer Disciplinary Board v. Kupec*, 202 W. Va. 556, 569, 505 S.E.2d 619, 632 (1998). As we have explained, "[m]isappropriation of funds by an attorney involves moral turpitude; it is an act infected with deceit and dishonesty and will result in disbarment *in the absence of compelling extenuating circumstances justifying a lesser sanction.*" *Committee on Legal Ethics v. Hess*, 186 W. Va. 514, 517, 413 S.E.2d 169, 172 (1991) (internal citation omitted) (emphasis added). The ODC acknowledges that the rule is not absolute, but it argues that the instant case is "void" of any compelling extenuating circumstances that would justify a sanction other than disbarment. We disagree.

Recently, we rejected the ODC's suggestion that an attorney's conduct regarding a mishandled fee constituted the type of "misappropriation" or "conversion" of client funds that warrant annulment. *See Lawyer Disciplinary Board. v. Harris*, 251 W. Va. 376, 914 S.E.2d 249 (2025) (lawyer who deposited $50,000 in legal fees into his IOLTA account then withdrew the entire fee via transfers that had no relationship to any

25

work performed on the cases was suspended for two years).[19]  Moreover, we have certainly imposed lesser sanctions than annulment in cases with conduct similar to that of Mr. Freeman.  For instance, in *Lawyer Disciplinary Board v. Morgan,* 228 W. Va. 114, 717 S.E.2d 898 (2011) we suspended a lawyer's license for one year for, in part, accepting retainer fees for work not performed and directly depositing them into his operating account.  Similarly, in *Lawyer Disciplinary Board v. Thorn*, 236 W. Va. 681, 783 S.E.2d 321 (2016), "we issued a one-year suspension for multiple counts involving 'non-refundable, so-called flat fee retainers' where funds were placed into operating, rather than IOLTA accounts and no work [was] performed[.]"  *Harris*, 251 W. Va. at ---, 914 S.E.2d at 273.   We are aware that the facts of these cases are not identical to the underlying conduct in the instant case.  However, we find these cases to "involve the most similar underlying conduct" to the instant case.  *Id*.

The appropriate sanction in this case should punish Mr. Freeman, protect the public and restore confidence in the legal profession.  As we have explained:

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

---

[19] In *Harris*, we found "a relatively uniform one-year suspension" as a baseline for conduct similar to that of Mr. Harris.  *Harris*, 251 W. Va. at  ---, 914 S.E.2d at 273.

Syl. Pt. 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987). While Mr. Freeman violated multiple rules several times, we do not believe that annulment is warranted in this case. Having carefully weighed all of the factors found in Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure, we agree with the HPS that an eighteen (18) month suspension will appropriately punish Mr. Freeman for his misconduct while also protecting the public and restoring confidence in the legal profession. We also adopt the other recommended sanctions of the HPS.

## IV.  CONCLUSION

For the reasons set forth herein, we impose the following sanctions:

(1) That Mr. Freeman's law license be suspended for eighteen (18) months;

(2) That Mr. Freeman be ordered to comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure, and also be directed to promptly surrender all papers and property in his possession to which his clients are entitled;

(3) That Mr. Freeman be required to petition the Court for reinstatement and that he complete twelve (12) hours of CLE devoted solely to Office Management/Ethics prior to submitting said petition; and

(4) That Mr. Freeman be ordered to reimburse the Lawyer Disciplinary Board the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law License Suspended and Other Sanctions.